**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| ROBERT O., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | No. 23-2154 |
| Commissioner of Social Security[1], | : | |
| Defendant, | : | |
| | : | |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**                                                    **APRIL 21, 2026**
**U.S. MAGISTRATE JUDGE**

Robert O. ("Plaintiff") appeals the Commissioner of Social Security's final decision to

deny disability benefits. He alleges the Administrative Law Judge's ("ALJ") unfavorable

decision resulted from three errors. First, the ALJ improperly substituting her lay judgment for

medical opinions and records. Second, an erroneous determination that the Plaintiff could

perform his past relevant work experience. Third, a finding that Plaintiff could perform semi-

skilled jobs in the national economy without finding transferable skills. The Commissioner

counters that the determination applied the correct standard and there is substantial evidence to

support that decision. For the reasons that follow, the Court finds Plaintiff's request for review

should be denied.

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **BACKGROUND**

A.  **Factual and Procedural History**

Plaintiff was born in October 1981. (R. 27.) He was forty years old when his appeal was denied. (*Id.*) Plaintiff achieved a high school diploma and completed four years of college. (R. 20.) Each week he alternates between living alone in his house and living with his mother in her apartment. (R. 47.) He has a driver's license, takes public transportation, cooks, cleans, and shops. (R. 48.)

He previously worked as a receptionist, greeting visitors, answering phones, and using a computer. (R. 27, 44.) Plaintiff testified he was mostly seated during the day, and his work did not require heavy lifting. (R. 44-45.) He was let go from this job, which Plaintiff attributes to depression, non-attendance, "a bad dynamic in the office," and his job performance, including an inability to keep up with the workload. (*Id.*)

Plaintiff testified that prior to February 2020, he lost mobility in his left hand and foot. (R. 43.) He underwent surgery in March 2021, for his foot, but saw limited improvement (R. 40-43, 49-51, 101.) He has a history of bipolar disorder and depression. (R. 249.) He last received treatment in 2009. (R. 46.)

On February 12, 2020, Plaintiff filed an application for Supplemental Security Income ("SSI") for a disability allegedly beginning on October 1, 2019. (R. 17.) Following a hearing on October 22, 2021, Plaintiff's claims were denied in a written opinion dated November 24, 2021. (R. 29.) The Appeals Council denied Plaintiff's request for review in April 2023. (R. 1.) Plaintiff timely appealed.[2]

---

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C § 636(c). *See* ECF Doc. No. 6.

### B. ALJ's Decision

The ALJ evaluated Plaintiff's claims under the five-step sequential analysis set forth in the Social Security regulations.[3] (R. 18-19.) At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since February 12, 2020. (R. 20.)

Next, at step two, the ALJ found Plaintiff's cerebral palsy, left foot drop, and degenerative joint disease of the left foot were severe impairments. (R. 19-20.) The ALJ noted Plaintiff's medical records and testimony also described hypertension, high blood pressure, bipolar disorder, depression, and substance abuse disorder. (*Id.* at 20-21.) However, the ALJ did not find evidence to support a finding that these diagnoses were severe. Plaintiff's high blood pressure had not required emergency treatment, and he was healthy enough to undergo foot surgery. (*Id.* at 20.)

In concluding Plaintiff's bipolar disorder, depression, and substance abuse disorder caused no more than minimal limitations in his performance of basic mental activities, the ALJ considered the "paragraph B" criteria, which set out broad areas of mental functioning, and under existing disability regulations, are used to evaluate mental disorders. (*Id*. at 21.) Only in the fourth area, adapting or managing oneself, did the ALJ find Plaintiff had mild limitations, noting some difficulty with his ability to provide personal care for himself, given his cerebral palsy. (*Id*.)[4]

---

[3] The sequential analysis requires the ALJ to evaluate (1) whether claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering his residual functional capacity; and (5) whether the claimant can adjust to other work considering his residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201-202 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)- (v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

[4] The ALJ concluded Plaintiff had no limitation in the areas of (1) understanding, remembering or applying informant; (2) interacting with others; (3) and concentrating, persisting or maintaining pace. (R. 20.) In support, the

Moving to step three, the ALJ determined one impairment, or the combination of multiple impairments, did not rise to the level set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 21). Specifically, the ALJ found Plaintiff's medical treatment and examination history did not meet the requirements of Listing 1.18 or 11.07. (*Id*.)

At step four, considering Plaintiff's symptoms and statements, as well as the medical opinions and medical findings required by 20 C.F.R. 416.920c, the ALJ found Plaintiff has the residual functional capacity to perform light work, except:

> [H]e needs the ability to alternate from standing and walking to sitting during the workday, approximately every 45 minutes to 1 hour. He can never climb ladders, ropes, or scaffolds, but occasionally climb ramps or stairs. He can frequently perform other postural movements. He can occasionally reach overhead bilaterally. With the non-dominant, left upper extremity, the claimant can occasionally push, pull, and handle, but is unable to finger, or perform fine manipulative tasks. He can frequently reach in all planes with his left upper extremity. He can only occasionally use his left lower extremity to operate foot controls. He can occasionally be exposed to unprotected heights and hazards. The claimant cannot work at an assembly line pace.

(*Id*. at 22.)

The ALJ found Plaintiff could perform past relevant work, as actually performed, excluding activities outside of Plaintiff's residual functional capacity. (R. 27.)[5] Citing the vocational expert's testimony, the ALJ found Plaintiff could also perform other work in the national economy, such as information clerk or surveillance system monitor. (R. 28.) Finally, at

---

ALJ described Plaintiff's graduation from high school, five years of college, and enrollment in a master's program. (*Id.*) Further, the ALJ set out Plaintiff's ability to take medicine without reminders, prepare his meals, use a computer, follow directions, drive, including Uber, sign a lease, and comply with the lease requirements. (*Id.*) She also noted Plaintiff enjoys watching television, listening to the radio, reading, and playing video games. (*Id.*) Plaintiff displayed intact memory during a psychological consultative examination, is able to concentrate for 30 minutes, and has no documented history of attention or concentration problems. (*Id.*) Plaintiff did not, in the ALJ's summation, present evidence of social difficulties, as he sees friends and spends time with his mother. (*Id.*) The ALJ also discussed Plaintiff's lack of mental health treatment or prescriptions for any mental health disorders. (*Id.*)

[5] While the vocational expert's testimony indicated Plaintiff would require a one-handed keyboard or voice software to work, the ALJ highlighted Plaintiff had no such accommodations in his prior position, before adding "presumably, the claimant would be able to return to such work in a setting with appropriate accommodations, as well." (R. 27.)

step five, the ALJ concluded there are other jobs in the national economy that Plaintiff is able to perform, given his age, education, work experience, and residual functional capacity. (R. 29.) The ALJ, therefore, found Plaintiff was not disabled as defined by the Social Security Act ("SSA"). (R. 29.)

## II.    STANDARD OF REVIEW[6]

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 587 U.S. 97, 97 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In applying this deferential standard of review, the Court "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 552). In other words, the Court must not re-weigh the evidence before the ALJ, but instead must assess whether substantial evidence supports the ALJ's findings. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). In doing so, the Court determines whether the ALJ's decision "meets the

---

[6] Plaintiff has not challenged the ALJ's decision for substantial evidence, instead Plaintiff rests his entire challenge on legal error. (Doc. No. 8 at 7, 10; Doc. No. 10 at 1 ("SSA may wish to focus on substantial evidence over legal error, but that is not what Mr. Olczak has argued. This Court is entitled to (and must) consider whether the ALJ's decision is based on legal error, regardless of SSA's suggestion to the contrary.").) Therefore, the arguments are evaluated only under this standard, as any challenge to substantial evidence is waived.

burden of articulation demanded by the courts to enable informed judicial review." *Kenyon v. Saul*, 2021 WL 2015067, at *5 (M.D. Pa. May 19, 2021). In this regard, the ALJ need not "employ particular 'magic' words" or "adhere to a particular format in conducting his analysis." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). The Court requires—at the very least—that the ALJ "set forth the reasons for [their] decision." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

Where a party complains of legal error, a District Court "exercises plenary review over questions of law." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545 (3d Cir. 2003). On review, the Court must consider if the ALJ applied the correct legal standard. *Cordero v. Kijakazi*, 597 F. Supp. 3d 776, 786 (E.D. Pa. 2022); *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983). Therefore, "even if a decision made by an ALJ is supported by substantial evidence, this court can overturn that decision if it finds that it was based upon incorrect legal standards." *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006).

## III.    DISCUSSION

### A.  The ALJ Did Not Commit Legal Error At Step Two

Plaintiff argues the ALJ committed legal error by substituting her lay judgment for the opinions of medical sources of record as to the severity of Plaintiff's mental impairments and the limitations caused by those impairments. (Doc. No. 8 at 2; Doc. No. 10 at 1-2.) Defendant responds the ALJ's decision was supported by substantial evidence, such as Plaintiff's non-treatment and his daily activities, and the ALJ correctly proceeded through the paragraph B criteria to conclude Plaintiff did not have severe impairments in these areas. (Doc. No. 9 at 5-15.)

As relevant to this challenge, at step two, the ALJ found as follows as to the severity of Plaintiff's mental impairments:

> The claimant's medically determinable mental impairments of history of bipolar disorder/depressive, and substance use disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. [7]

---

[7] Plaintiff's numerous sub-arguments alternate between the ALJ's findings at step two and step four, without addressing the distinct standards applied at each step. This may be because, in determining Plaintiff's RFC at step four, the ALJ elaborated on the state agency and consultative medical examiners' paragraph B conclusions, and, relying on Plaintiff's nontreatment and daily activities, explained why she did not adopt their opinions:

> The State agency psychological consultant at the Initial level rates the claimant at None/Mod/None/None under B criteria. At the Reconsideration level, the claimant is rated at None/Moderate/Moderate/None. It is noted that the State consultants neither treated nor examined the claimant. Their findings are inconsistent with the medical evidence in the record, including a complete lack of mental health treatment from 2009 on, without any evidence of decompensation despite this lack of treatment. In addition, their conclusions are contradicted by the claimant's documented functioning, including but not limited to the ability to drive for a ride share service for 6 years (Exhibit B5F/1), sign a lease and abide by its terms for 4 years (Exhibit B2D), and socialize with friends and share a house at least part of every week with his mother (Testimony and Exhibit B6E).
>
> […]
>
> The psychological consultative examiner, Gregory Kramer, Ph.D. indicated the claimant was limited to None/Moderate/None/Moderate in the "B" paragraph categories. However, this seems equally based on alleged depressive symptoms and alcohol use. Also, there is no real support for any social limitations, given the claimant's ability to share his home with his mother at times, his visits to friends, ability to shop in stores, go to parks, and use public transportation, and to drive for a ride share company for many years (Testimony and Exhibits B5E and B5F). It also seems likely that an individual with moderate social limitations would likely have been engaging in some form of mental/behavioral health, which the claimant appears to have only begun to pursue a few weeks before his hearing was scheduled to occur. The undersigned does not find Dr. Kramer's opinion persuasive, since he only saw the claimant on a single occasion, and his conclusions are not consistent with, or supported by the claimant's functioning, or the absence of any treatment for any mental condition for many years.

(R. 25-26.)

Although Plaintiff does not present any outright challenges to when the medical evidence was considered, that he challenges the evaluation of the medical findings at step four, under the banner of a step two argument, suggests he implicitly takes issue with the timing of the ALJ's procession through the medical examiner's paragraph B findings. However, an ALJ's opinion must be "read as a whole," and whether "against the record, the reviewing court can understand why the ALJ reached his decision." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Erazo v. O'Malley*, No. 22-0820, 2024 WL 1704905, at *4 (E.D. Pa. Apr. 18, 2024). The ALJ's consideration of the evidence was proper and the Court is able to follow her reasoning. *See McIntyre v. Berryhill*, No. 17-2176, 2018 WL 5962476, at *4 (D.N.J. Nov. 13, 2018) ("At step four, the ALJ appropriately made a more detailed assessment of the evidence considered at steps two…").

Therefore, the Court has evaluated these arguments as the apply to step two, but, following the parties' briefs, has relied on the ALJ's further explanation of the paragraph B criteria at step four.

(R. 20.) Having reviewed the arguments, and the administrative record, for the reasons explained below, the Court concludes remand is not required.[8]

### 1. The State Agency and Consulting Psychologists

Plaintiff presents several arguments centered on the medical opinion evidence from the state agency reviewing psychologists—Dr. Amanullah and Dr. Lease—and the consulting psychologist, Dr. Gregory Kramer. (Doc. No. 8 at 2-4.)[9] First, that the ALJ's conclusion was contradicted by Dr. Amanullah's, Dr. Lease's, and Dr. Kramer's opinions. (*Id*.at 3.) [10]  Second,

---

[8] Assuming arguendo there had been an error at step two, *it would not require remand*. The ALJ considered Plaintiff's mental impairment in the remainder of the analysis. (R. 24-25.) Plaintiff cites several cases to establish step two requires only a *de minimis* standard, where impairments are non-severe only if there is a "slight abnormality […] with no more than a minimal effect on the ability to work." (Doc. No. 8 at 10 (quoting SSR 85-28, 1985 WL 56856 *3).) But, provided "the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ makes at step two is harmless error." *Nagy v. Colvin*, 14-4502, 2015 WL 4879020, at *6 (D.N.J. Aug. 14, 2015) (applying standard where, like here, ALJ found plaintiff had severe physical impairments but did not have severe mental impairments). The ALJ determined Plaintiff had three severe impairments and because benefits were not denied at step two, remand would be improper. (R. 19.)

[9] Only three of the four arguments are addressed in the text of this opinion. The fourth argument—that the ALJ's determination that Plaintiff did not have a severe impairment contravened all medical source of record, in favor of the ALJ's lay presumptions—is only briefly laid out in Plaintiff's brief. (Doc. No. 8 at 9.) Defendant characterized this argument as asserting that "the ALJ's determination as to the severity of Plaintiff's mental impairments had to be based on a medical opinion," and responds the ALJ, not any physician, is the ultimate arbiter of a claimant's disability. (Doc. No. 9 at 13.

To the extent Defendant's characterization of Plaintiff's argument is accurate, and to the extent this is a distinct argument, Defendant is correct. "Even if the decision of the ALJ conflicted in part with the medical testimony provided, an ALJ always maintains the discretion to weigh medical evidence against all other relevant evidence." *Gabbia v. Sec'y of Health & Hum. Servs.,* No. 82-3056 (CSF), 1990 WL 59383, at *5 (D.N.J. May 2, 1990). "Plaintiff is correct that an ALJ may not capriciously disregard competent medical evidence, however, an ALJ is permitted to discredit medical evidence that conflicts with other evidence in the record, provided that the ALJ provides his or her reasons for doing so." *Logan v. Astrue*, No. 07-1472, 2008 WL 4279820, at *11 (W.D. Pa. Sept. 16, 2008).

[10] By way of background, Dr. Amanullah found Plaintiff had severe impairments based on her assessment that he had no limitations in his ability to understand, remember, or apply information; moderate limitations in his ability to interact with others; no limitations in his concentration, persistence, or ability to maintain pace; and no limitations in his ability to adapt or manage oneself. (R. 81-89) Dr. Lease determined Plaintiff had severe limitations based on her finding that he had no limitations in his ability to understand, remember, or apply information; moderate limitations in his ability to interact with others; moderate limitations in his concentration, persistence, or ability to maintain pace; and no limitations in his ability to adapt or manage oneself. (R. 101-102.)

Dr. Greogry Kramer, as a consultative examiner, met with Plaintiff in 2020. (R. 358.) He determined Plaintiff's depression and alcohol use caused moderate limitations in his ability to interact with the public, supervisors, co-workers, and to respond appropriately to usual workplace situations and to changes in a routine work

that the ALJ did not specify how persuasive she found Dr. Amanullah and Dr. Lease. (*Id*. at 4.) And third, that the ALJ did not describe the consistency between Dr. Amanullah's opinion, Dr. Lease's opinion, and Dr. Gregory Kramer's opinions. (*Id.*) The Commissioner denies any of the arguments require remand. (Doc. No. 9 at 5-10.)

Under 20 C.F.R. § 416.920c, medical opinions or prior administrative medical findings are not given controlling weight. 20 C.F.R. § 416.920c(a).[11] Instead, ALJs are directed to consider medical opinions by weighing supportability, consistency, relationship with the claimant—such as length, frequency of examinations, purpose of the treatment, extent of the treatment, examining relationship—specialization, and other factors. 20 C.F.R. § 416.920c(c). In doing do, ALJs "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citations omitted). As explained below, the ALJ's review complied with these requirements.

### a.   In Determining Plaintiff's RFC, the ALJ Was Able to Weigh Dr. Amanullah's, Dr. Lease's, and Dr. Kramer's Opinions Against Other Evidence

Plaintiff asserts the ALJ committed a legal error by substituting her lay opinion for Dr. Amanullah's, Dr. Lease's, and Dr. Kramer's determinations that Plaintiff's mental impairments are severe. (Doc. No. 8 at 3; Doc. No. 10 at 2.) Defendant counters the ALJ was entitled to find the medical opinion testimony was contradicted by Plaintiff's non-treatment for his mental health

---

setting. (R. 358-59.) This, as the ALJ noted, meant Dr. Kramer concluded Plaintiff had moderate limitations in the second, interacting with others, and fourth, adapting and managing oneself, paragraph B criteria. (R. 25.)

[11] This action was filed after March 27, 2017, so this section governs the action.

and daily functioning, and was able to consider the extent of the treatment relationship. (Doc. No. 9 at 8-9.)

Plaintiff cites *Morales v. Apfel*, for "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts[, …] especially […] in a case involving a mental disability." 225 F.3d 310, 319 (3d Cir. 2000); (Doc. No. 10 at 2 (citing *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) for quotation from *Morales*)).  There, the Third Circuit considered an appeal after an ALJ rejected the opinion of a treating doctor, in favor of a non-examining physician's opinion, the ALJ's own observations at the hearing that the plaintiff was exaggerating his symptoms, and a somewhat erroneous characterization of two other physicians' opinions. *Morales*, 225 F.3d at 317-19. While the Third Circuit noted, "an ALJ's personal observations of the claimant carry little weight in cases ... involving medically substantiated psychiatric disability," subsequent, although unpublished, cases have distinguished *Morales* where an ALJ had *additional* bases for their conclusions, such as objective evidence of daily functioning or where the discounted physician had not treated the plaintiff. *Id.* at 319 (citations and quotations omitted); *see, e.g.*, *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 121 (3d Cir. 2020); *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019); *Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 782 (3d Cir. 2003).

The ALJ's review complies with 20 C.F.R. § 416.920c. The ALJ described the state agency psychological consultants' and the consultative examiner's conclusions, but noted they did not treat Plaintiff. (R. 25.) Plaintiff had not received treatment for his bipolar disorder or depression for over a decade, and, without a treating physician's opinion, the ALJ relied on the record, including evidence of Plaintiff's daily functioning, such as driving for Uber, abiding by a lease, seeing friends, and living part-time with his mother, as well as lack of mental health

treatment or "decompensation," in the absence of treatment. (*Id.*; R. 317-326.) *Booker v. Colvin*, No. 14-4984, 2017 WL 914911, at *4 (E.D. Pa. Mar. 7, 2017) (affirming where "ALJ concluded that these mental impairments, based on the lack of medical records and on the fact that Plaintiff had discontinued treatment for these conditions in 2010 and had not sought mental health treatment since the date of her application for benefits in 2011, were not severe"); *Grabowski v. Berryhill*, No. 17-1555, 2018 WL 1083045, at *9 (E.D. Pa. Jan. 31, 2018), *report and recommendation adopted,* No. 17-1555, 2018 WL 1071758 (E.D. Pa. Feb. 27, 2018) (affirming ALJ's dismissal of consultative examiner's opinion as to plaintiff with bipolar disorder where ALJ found this conclusion was unsupported by evaluation report and plaintiff's daily activities); *see also Livai v. Berryhill*, No. 16-02379, 2018 WL 2771582, at *9 (M.D. Pa. Feb. 8, 2018), *report and recommendation adopted*, No. 16-2379, 2018 WL 2771514 (M.D. Pa. June 8, 2018) ("There are no opinions by treating sources in the record, and no opinion was afforded controlling weight."). The ALJ's summary provided an adequate explanation of her reasoning, and the factual foundations for her ultimate conclusion. Therefore, remand on this basis is not warranted.

> **b. The Court Is Able to Follow the ALJ's Reasoning as to Dr. Amanullah's and Dr. Lease's Persuasiveness**

Second, Plaintiff claims contrary to 20 C.F.R. § 416.920c(b), the ALJ made no findings as to Dr. Amanullah's and Dr. Lease's persuasiveness. (Doc. No. 8 at 4.) Defendant counters that under 82 Fed. Reg. 5844-01, at 5858, the Court is able to follow the ALJ's reasoning in the absence of specific statements as to persuasiveness—namely that, as Plaintiff acknowledges, the ALJ rejected the opinions. (Doc. No. 9 at 9; Doc. No. 8 at 4.)

20 C.F.R. § 416.920c(b) does instruct ALJ's to "articulate in [the] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior

administrative medical findings." 20 C.F.R. § 416.920c(b). "To effectively consider the persuasiveness of a medical opinion, an ALJ must only explain how he analyzed the supportability and consistency factors for that opinion." *Cruz v. Comm'r of Soc. Sec.*, No. 24-03993, 2025 WL 1970247, at *3 (E.D. Pa. July 16, 2025) (citing § 416.920c(b)(2)). Other courts have held "any error in failing to articulate the weight given to medical opinions is harmless when there is no inconsistency between the ALJ's decision and the records." *Robinson v. Berryhill*, No. 16-62253, 2018 WL 1875622, at *3 (S.D. Fla. Mar. 14, 2018), *aff'd sub nom. Robinson v. Acting Comm'r of Soc. Sec.*, 766 F. App'x 811 (11th Cir. 2019).

Defendant is correct that the Court is able to "trace the path of [the] adjudicator's reasoning," and conclude the ALJ did not credit the state agency psychologists' conclusions.[12] 82 Fed. Reg. 5844-01, at 5858. Here, although not by name, the ALJ did analyze supportability, or relevant objective medical evidence consistent with a medical source's opinion, and consistency, with evidence from other medical sources.[13] (R. 25 ("Their findings are inconsistent with the medical evidence in the record, including a complete lack of mental health treatment from 2009 on…."); The ALJ found Plaintiff's medical records, specifically his functioning in the absence of treatment, did not support Dr. Amanullah's and Dr. Lease's opinions. (R. 25.) Consequently, it is clear from the ALJ's explanation that she did not find any of the opinions persuasive. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ, of course, need not employ particular 'magic' words").

---

[12] For example, in referring to other physicians, the ALJ writes "the undersigned finds [the other physician's assessments] only partially persuasive. As with the psychological consultants, these individuals neither treated nor examined the claimant…." (R. 25.) From this, the Court can understand the ALJ likewise did not find Dr. Amanullah's and Dr. Lease's opinions persuasive, in part because they did not treat Plaintiff.

[13] The ALJ's treatment of consistency is addressed below, as it was raised as a distinct ground for remand.

### c. The ALJ's Failure to Note the Consistency of the Medical Opinions Does Not Require Remand

Third, Plaintiff argues the ALJ ignored the consistency of Dr. Amanullah's and Dr. Lease's opinions, as well as Dr. Gregory Kramer, who did examine Plaintiff and found Plaintiff's limitations rose to the level of severe mental impairment. (Doc. No. 8 at 4; R. 353-356.) Defendant rejects Plaintiff's consistency argument, noting case law which holds consistency alone does not make medical opinions dispositive. (Doc. No. 9 at 9 (citing *Marencic v. Comm'r of Soc. Sec.*, No. 18-1863, 2020 WL 879410, at *9 (M.D. Pa. Jan. 27, 2020), *report and recommendation adopted by* 2020 WL 880758 (M.D. Pa. Feb. 21, 2020).) Defendant further argues "[n]othing in the regulations requires the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis, […] rather the ALJ must merely provide enough explanation to permit meaningful judicial review." (*Id.* (quoting *Marencic*, 2020 WL 879410, at *9).)

20 CFR § 416.920c(c)(2) instructs that the "more consistent a medical opinion […] is with the evidence from other medical sources […], the more persuasive the medical opinion…." 20 CFR § 416.920c(c)(2). However, "[t]he fact that medical opinions are consistent with each other does not, in and of itself, establish that any of the opinions were entitled to great weight or that the ALJ erred." *Hughes v. Kijakazi*, No. 21-367, 2022 WL 4103194, at *12 (W.D. Wis. Sep. 8, 2022). A failure to provide this description is not, alone, sufficient for remand; "[w]hile consistency is a factor ALJs consider in their evaluation of medical opinion evidence, they are not specifically required to catalogue consistencies between medical opinions in their decisions." *Nelson v. Kijakazi*, No. 21-186, 2022 WL 504578, at *1 n.3 (W.D. Pa. Feb. 18, 2022). "[T]he regulations do not mandate that the ALJ discuss the consistency between *specific* medical source

opinions." *Gary T. v. Bisignano*, No. 25-1294, 2025 WL 2785040, at *12 (E.D. Pa. Sep. 30, 2025) (emphasis in original) (citations omitted).

Plaintiff is correct that the ALJ did not make any finding as to the consistency between Dr. Amanullah's, Dr. Lease's, and Dr. Kramer's opinions. (*See generally* R. 25-26.) However, the ALJ did note that she found these opinions were inconsistent with medical evidence in the record. (R. 25.)  The ALJ described the evidence she considered, provided reasoning for how much the evidence impacted her conclusion, and described why she rejected certain opinions. (R. 24-26.) A failure to specifically note consistency between the three opinions does not require remand.

### 2.   The ALJ Did Not Commit Legal Error in Considering Plaintiff's Nontreatment

Next, Plaintiff argues the ALJ improperly considered Plaintiff's nontreatment for his mental impairments, without considering *why* Plaintiff may not have been treating, as required under Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *8-9. (Doc. No. 8 at 5; Doc. No. 10 at 2-3.) Emphasizing that Plaintiff bears the evidentiary burden, Defendant notes Plaintiff did not testify why he failed to seek treatment, which does not comply with his obligation to furnish evidence of his disability. (Doc. No. 9 at 11.)

"If the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p. *See Houdeshel v. Berryhill*, No. 16-01481, 2017 WL 4347163, at *5 (M.D. Pa. Sep. 29, 2017) ("Plaintiff offers no good reason why she failed to comply with regularly taking her medications. The ALJ did not consider Plaintiff's noncompliance dispositive; rather,

the ALJ properly considered such noncompliance as a factor in evaluating Plaintiff's credibility when looking at the record as a whole.")

During the hearing, the ALJ asked the following:

> Q. Okay. Now for very briefly in 2009 you had a little bit of mental health treatment, is that correct?
> A. Yes. That's right.
> Q. Okay. Have you followed up since 2009?
> A. Not really. Like I don't know I, let's see.
> Q. Does your, does your family doctor prescribe you any medication, anything like that?
> A. No. Yes, I want to, I want to go back to –
> Q. But you have not since 2009, correct?
> A. Yeah, I don't—
> Q. Do you have an upcoming appointment, have you scheduled an appointment?
> A. So I tried to reach out and schedule an appointment but what happened was like –
> Q. When did you do that?
> A. It was a couple weeks ago and then somebody called me back but it was like a big language barrier like the person like left me a voicemail and it's very hard to understand any of the voicemail. So I decided not to call back to schedule with them but I have been, yeah.

(R. 46.)

As part of the paragraph B analysis at step two, the ALJ noted that Plaintiff "has not had any recent mental health treatment and does not take any psychotropic medications." (R. 20.) Plaintiff is diagnosed with bipolar disorder, depression, and anxiety, but, as described, has not received treatment since 2009. (R. 46, 107.) Following his diagnosis, Plaintiff worked as a receptionist until 2011 and worked as a ride-share driver after 2015. (R. 252.)

The record provides more insight into Plaintiff's treatment history. In his function report, Plaintiff reported physical pain, which, coupled with depression, affected his ability to complete chores and sometimes prevented him from leaving his home or socializing (E. 260, 262, 265.) These descriptions also highlighted his insomnia, which he believes causes his depression. (R. 267.) His mother's third-party report, discussed in greater detail below, also highlighted Plaintiff's insomnia and depression. (R. 268-69, 271.) Further, she reported Plaintiff was

15

diagnosed with bipolar disorder at 26, attributing his struggles with school, work, and friends to this disorder. (R. 269, 273.) Both reports, however, principally highlighted the effect of his physical impairments on his life. (R. 261-264, 266, 270, 272.)

Plaintiff's report did not mention his bipolar disorder, although his treatment history appears elsewhere in his medical records. (R. 317-327.) His medical records establish he was treated, via talk therapy and medications, in 2009 for bipolar disorder and cannabis abuse. (R. 318.) In March 2009, he reported no side effects from his medications, which were prescribed for his mood and insomnia. (*Id.*) However, in July 2009, he described feelings of lethargy, apathy, and indecision, attributing this to his medication. (R. 321.) That report demonstrates Plaintiff received treatment for bipolar disorder, as well as alcohol and cannabis abuse. (R. 325.) Plaintiff restarted treatment on August 2, 2022, which the appeals officer determined did not establish a reasonable probability of a different outcome. (R. 13.)

Here, the ALJ asked Plaintiff about his gap in treatment, and relied on that gap in treatment to determine the severity of Plaintiff's mental impairments, in light of Plaintiff's daily activities and the medical opinion evidence. *Vokes v. Colvin*, No. 12-1662, 2014 WL 457763, at *4 (W.D. Pa. Feb. 4, 2014) ("Although plaintiff asserts that it was "inappropriate" for the ALJ to consider plaintiff's lack of mental health treatment, the Regulations provide that frequency of treatment in fact may appropriately be considered…"); *Reilly v. O'Malley*, No. 21-02710, 2024 WL 290291, at *6 (E.D. Pa. Jan. 25, 2024) ("An ALJ must first consider possible reasons why a claimant has not complied with a treatment regimen [including by] at an administrative proceeding, ask why he or she has not ... sought treatment in a manner consistent with his or her complaints."). The medical record showed Plaintiff had not received treatment and was not taking medication. *See also Davis v. Saul*, No. 18-4288, 2019 WL 2525447, at *5 (E.D. Pa. June

16

18, 2019) ("Contrary to Plaintiff's assertion, it was not improper for the ALJ to consider evidence of gaps in treatment when assessing the limiting effects of Plaintiff's impairments.") The ALJ did not commit legal error in considering Plaintiff's nontreatment when assessing the paragraph B criteria.

### 3.    The ALJ's Reliance on Plaintiff's Daily Activities Was Not Legal Error

Plaintiff argues it was a remandable error to disregard the medical sources of record in favor of Plaintiff's daily activities, which Plaintiff alleges are in fact sporadic. (Doc. No. 8 at 7.) Defendants disagree, asserting Plaintiff's activities are everyday activities, which the ALJ was permitted to consider. (Doc. 9 at 11-12 (citing *Turby v. Barnhart*, 54 F. App'x 118, 122 n.1 (3d Cir. 2002)).

As previously noted, the hearing testimony did not describe Plaintiff's mental impairment in great detail, instead focusing on Plaintiff's more numerous complaints about his physical limitations. *See, e.g.*, R. 46-49 (discussing effect Plaintiff's physical impairments had on his daily activities). Elsewhere in the record, Plaintiff described "having meals, go[ing] for walks, see[ing] friends, and go[ing] to the store," as activities he did between waking up and going to sleep. (R. 261.) However, he later described struggling with many of these activities because of his physical limitations. (R. 262.) He reported leaving the house four to five times a week, but noted his depression sometimes kept him from leaving the home altogether. (R. 263.) He listed watching television and YouTube, shopping at thrift stores, and walking in the park as hobbies. (R. 264.) Plaintiff additionally noted he spends time with friends, but is sometimes limited by his depression. (R. 265, 267.)

Here, the ALJ was able to weigh Plaintiff's daily activities against his subjective complaints, especially as Plaintiff primarily attributed struggling with daily activities as an effect

17

of his physical limitations, which are not challenged here. (R. 46, 262.) 20 C.F.R. § 416.929; *Pack v. Comm'r of Soc. Sec.*, No. 20-1128, 2021 WL 3682151, at *6 n.12 (W.D. Pa. Aug. 19, 2021) ("A claimant's daily activities are relevant to the ALJ's assessment of functional limitations.") Because Plaintiff alleged he struggled to be around others, evidence of his social activity, with friends, family, and even strangers was important to assess the paragraph B criteria and the severity of his mental impairments. (R. 263, 265, 267.) The ALJ considered the evidence before her, including the doctors' opinions, Plaintiff's testimony, records, and activities, and while she did not find that this evidence supported Plaintiff's preferred result, she did not commit legal error, because she properly considered the record. *See Galloway v. Dudek*, No. 24-327, 2025 WL 2021918, at *11 (W.D. Pa. July 18, 2025).

### 4. The ALJ Did Not Commit Legal Error By Failing to Describe the Lay Testimony

Plaintiff contends the ALJ "ignored" Plaintiff's mother's testimony, in violation of SSR 85-16, 1985 WL 56855. (Doc. No. 8 at 7.) Defendant responds that under the March 27, 2017 regulations, the ALJ was not required to articulate how non-medical source testimony is considered. (Doc. No. 9 at 12.)

20 C.F.R. § 416.920c does not require ALJs to describe how non-medical source testimony is considered. Further, as other courts have noted, under current SSA regulations, "[w]here the ALJ gives clear and convincing reasons to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane reasons to reject the lay witness testimony." *Jeremy Dale O. v. O'Malley*, No. 23-00072, 2024 WL 1158404, at *7 (D. Idaho Mar. 18, 2024) (quoting *Thomas v. Comm'r, Soc. Sec. Admin.*, 2022 WL 292547, at *7 (D. Ariz. Feb. 1, 2022)). In some instances, such as mental impairment, third party testimony "may be valuable in

18

assessing an individual's level of activities of daily living," but it is not legal error for an ALJ to exclude a discussion of such testimony. SSR 85-16, 1985 WL 56855 at *4.

Plaintiff's mother completed a third-party function report. (R. 268-75.) She described spending about half of her time with him and noted his physical and mental limitations prevented him from holding a job, consistently participating in daily life, and caring for himself and others, in a time sensitive manner. (*Id.*) She also listed his activities and interests. (R. 272.) The ALJ did not describe these statements, noting only that she "considered all evidence in the record even if not specifically cited in this decision." (Tr. 17).

Because Plaintiff's mother was not a medical source, the ALJ did not commit an error in failing to describe how her statement supported his conclusion. *See Gerardo G. v. Comm'r of Soc. Sec.*, No. 22-1529, 2023 WL 34825, at *7 n.7 (D.N.J. Jan. 4, 2023) ("To the extent Plaintiff argues that [his mother's testimony] should have been referenced in the ALJ's decision, that argument is without merit, because his mother was not a medical source."). Additionally, where a non-medical source may be duplicative of Plaintiff's testimony, an ALJ is not obligated to review that testimony. *See id*. Both Plaintiff and his mother described his physical and mental limitations (R. 260-267, 268-275.) Therefore, the ALJ did not commit a reversible error by failing to specifically note Plaintiff's mother's testimony.

### B. It Was Not Error For the ALJ to Find Plaintiff Could Perform His Past Relevant Work, As Actually Performed.

Plaintiff next argues the ALJ erred by considering accommodations at step four. (Doc. No. 8 at 10 (citing *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999); Doc. No. 10 at 5-6.) Defendant replies the ALJ could consider employment with accommodations, and, in the alternative, the ALJ found Plaintiff could perform his past work experience, as actually performed. (Doc. No. 9 at 16.)

19

Under 20 C.F.R. § 416.973(c), "If [a claimant's] work is done under special conditions, [the SSA] may find that it does not show that [a claimant has] the ability to do substantial gainful activity. [...] However, work done under special conditions may show that [a claimant has] the necessary skills and ability to work at the substantial gainful activity level." Special conditions include a claimant who requires "special equipment."

However, Plaintiff correctly notes "when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of reasonable accommodation into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (emphasis in original) (citations and quotations omitted). This means an ALJ may "not consider whether [the claimant] could do so with accommodations, even if an employer would be required to provide reasonable accommodations" SSR 11-2p, 2011 WL 4055665, at *9. But, an ALJ may consider if "a claimant's former employer actually made the accommodation in a past job, and the issue being addressed is whether the claimant can perform that past work as it was actually performed." *Kimberly S. v. Comm'r, Soc. Sec.*, No. 23-1404, 2024 WL 5007372, at *5 (D. Md. Dec. 3, 2024) (citing SSR 11-2p, 2011 WL 4055665, at *9.) (internal quotations omitted); *Joshua D. v. Bisignano*, No. 24- 2056-, 2026 WL 50027, at *13 (N.D. Iowa Jan. 7, 2026) (finding harmless error in ALJ's decision where claimant required service dog and past work accommodated his use of service dog); *Rosanna M. v. Kijakazi*, No. 21-00495, 2022 WL 12448826, at *6 (C.D. Cal. Sep. 30, 2022), *aff'd sub nom. Montejo v. Kijakazi*, No. 22-55967, 2023 WL 8179281 (9th Cir. Nov. 27, 2023) ("In evaluating a claimant's ability to perform past relevant work, an ALJ may consider either the past relevant work as actually performed by the claimant or as generally performed in the national economy.").

20

Here, during the hearing, the ALJ elicited testimony from the vocational expert about Plaintiff's ability to work as a receptionist, both as he worked or with accommodations, such as a one-handed keyboard or voice activation software. (R. 57-59.) Relying on this testimony, the ALJ determined Plaintiff's work as a receptionist was past relevant work experience because it "was performed [within] the last 15 years, at levels that rose to SGA, and for long enough for the claimant to learn how to perform the duties of the job." (R. 27.) Within the established RFC limitations, the ALJ further concluded:

> [T]he claimant is able to perform it as actually performed. The vocational expert testified that, for an [sic.] with the limitations found in the claimant's RFC to perform such work as generally performed, per the DOT, they would be expected to require accommodations, such as a one-handed keyboard, or voice-activated software. However, the claimant testified that he did not have such accommodations at his prior job. The claimant was able to earn SGA for 2 years while working for his previous employer (Exhibit B6D), even without accommodations, therefore, the claimant would be able to return to such work as he performed it for his prior employer. Although such testimony was not specifically elicited, presumably, the claimant would be able to return to such work in a setting with appropriate accommodations, as well.

As the ALJ's determination rested, in part, upon Plaintiff's ability to perform his past relevant work experience as actually performed, remand is not warranted on this basis.

### C. The ALJ Did Not Commit Legal Error in Failing to List Plaintiff's Transferable Skills

Finally, Plaintiff argues the ALJ's step five finding was erroneous because the ALJ could not determine Plaintiff could perform semi-skilled work without also determining Plaintiff had transferable skills. (Doc. No. 8 at 12-13; Doc. No. 10 at 6.) Defendant responds any error at step five is irrelevant because it is an alternative finding.[14] (Doc. No. 9 at 17.)

---

[14] Defendant also responded to the substance of Plaintiff's argument, on this point, arguing that applicable regulations regard someone with a college degree as semi-skilled. (Doc. No. 9 at 17-18.)

At step five of the sequential review process, an ALJ must determine "whether the claimant, considering the claimant's RFC and vocational profile, can perform other jobs that exist in significant numbers in the national economy." *Linda S. v. O'Malley*, No. 22-3840, 2024 WL 1795386, at *15 (D.N.J. Apr. 25, 2024). This requires the ALJ to consider "an applicant's ability to adjust to other work." SSR 82-41, 1982 WL 31389, at *1. In doing so, an ALJ typically relies on several sources, including a hypothetical to a vocational expert and the Medical-Vocational Guidelines, or grids. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).

The Medical-Vocational Guidelines are used to establish that jobs exist in the national economy and a plaintiff could perform these jobs, even with any exertional limitations.[15] SSR 82-41 ("[T]he medical-vocational guidelines were introduced as Appendix 2 into the regulations and became binding at all levels of adjudication and appeal."); *Heckler v. Campbell*, 461 U.S. 458, 467 (1983) (finding use of grids does not conflict with Social Security Act); *Prinkey v. Astrue*, No. 11-65, 2012 WL 4596184, at *5 (W.D. Pa. Oct. 1, 2012) ("When the four factors in a claimant's case correspond *exactly* with the four factors set forth in the grids, the ALJ must reach the result the grids reach." (citing *Svkes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000)). These grids rely on age, education, previous work experience, and functional capacity.[16] 20 CFR Part 404, Subpart P, Appendix 2. However, "[t]he Third Circuit requires the guidance of a vocational

---

[15] Exertional limitations impact a claimant's strength in a job, such as "sitting, standing, walking, lifting, carrying, pushing, and pulling...." 20 CFR § 404.1569a(b). Nonexertional effect only the ability "to meet the demands of jobs other than the strength demands...." 20 CFR § 404.1569a(c)(1). Such as," difficulty in seeing or hearing ... and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 CFR § 404.1569a(c)(1)(iv), (vi).

[16] "A job is unskilled if it has a Specific Vocational Preparation (SVP) level of 2 or less ... To perform a job that is classified as SVP 3 and above, the individual must have the necessary skills to do so." *Arslanian v. Saul*, No. 19-13258, 2020 WL 6268698, at *14 (D.N.J. Oct. 26, 2020) (quoting Dictionary of Occupational Titles, Appendix C); *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) ("Unskilled work corresponds to an SVP level of 1–2; semi-skilled work corresponds to an SVP level of 3–4; and skilled work corresponds to an SVP level of 5–9.").

expert or similar evidence where the ALJ recognizes a claimant's impairment to impose nonextertional limitations." *Rios v. Astrue*, No. CIV.A. 09-5004, 2010 WL 3860458, at *11 (E.D. Pa. Sept. 30, 2010), *aff'd sub nom. Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532 (3d Cir. 2011).

At step five, the ALJ wrote[17]:

The claimant was born on October 13, 1981 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963). The claimant has at least a high school education (20 CFR 416.964). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

[…]

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as information clerk (DOT No. 237.367-022), requiring sedentary exertion, with an SVP of 4, and with 101,700 jobs in the national economy; and surveillance system monitor (DOT No. 379.367-010), sedentary, SVP 3 or 4, with 2,400 jobs nationally […]

---

[17] Social Security Ruling 82–41 defines skill as:

[K]nowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through the performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41.

Transferability, in turn "means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." Social Security Ruling 82–41 "The ruling provides that transferability of skills is an issue where an individuals's impairments prevent the performance of past relevant work and that work has been determined to be skilled or semiskilled." *Oldenburgh v. Astrue*, No. 08-1671, 2009 WL 812010, at *4 (M.D. Pa. Mar. 26, 2009).

[…]

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(R. 27-28.)[18]

Here, relying on the vocational expert's testimony and substantial evidence in the record to determine Plaintiff could make a successful adjustment to his prior work or to other work. (*Id.*) Plaintiff, therefore, is correct, that the ALJ found Plaintiff was not disabled, without making a finding as to the transferability of Plaintiff's skills. (Doc. No. 8 at 12.) Therefore, the question becomes, was the ALJ required to make such a finding?

"Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled."[19] SSR 82-41. Here, the ALJ determined Plaintiff

---

[18] During the hearing, the ALJ asked the vocational expert a hypothetical about the job performance of someone with plaintiff's age, education, work experience, and physical limitations. (R. 57-58.) As previously described, the vocational expert answered that plaintiff could perform his work as a receptionist, as he actually performed it, but not as it is performed in the national economy. (R. 58.) The vocational expert went on to testify that plaintiff could work as an information clerk or surveillance system monitor. (R. 59-60.) After noting these occupations were semi-skilled, his work as a receptionist required paying attention and monitoring (R. 60-61.)

As required the ALJ also asked the vocational expert about the Dictionary of Occupational titles, which supported the vocational expert's conclusion (R. 28.)

[19] "When transferability appears to be relevant to finding whether a claimant with skilled or semiskilled PRW can adjust to other skilled or semiskilled work, the ALJ should […] (1) identify the "acquired work skills;" (2) identify "specific occupations to which the acquired work skills are transferable;" and (3) cite "[e]vidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy." *Id.*

Finding transferability is most likely when the alternative occupation(s) identified involve the "same or a lesser degree of skill," use the "same or similar tools and machines," and involve the "same or similar raw materials, products, processes, or services," though all three similarities are not required to find transferable skills. 20 C.F.R. § 404.1568(d)(2)—(3)."

24

did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [20 CFR § 416.925]" and found that Plaintiff could perform his past work experience, which was semi-skilled. (R. 19, 27, 57.) Therefore, because the ALJ determined Plaintiff could perform his past work experience, transferability of skills was not at issue.[20]

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff Robert O.'s request for review is **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**, and this matter is **DISMISSED.** An appropriate order follows.

BY THE COURT:

_s/ Pamela A. Carlos_____
PAMELA A. CARLOS
U.S. Magistrate Judge

---

*Cassley v. Kijakazi*, No. 21-226, 2022 WL 1748389, at *1 (W.D. Pa. May 31, 2022).

[20] Even if there was an error at step five, it would not require remand. During the five-step sequential review process, the plaintiff bears the burden "at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Only where the analysis necessarily proceeds to the fifth step, does the burden shift to the Commissioner. (*Id.*); 20 C.F.R. § 404.1512(b)(3). However, "if [an ALJ] can find that [plaintiff is] disabled or not disabled at a step, [the ALJ makes his or her] determination or decision and [does] not go on to the next step. 20 C.F.R. § 416.920(a)(4). An incorrect, but alternative, step five finding may be harmless error. *See Iacouzzi v. Comm'r Soc. Sec.*, No. 20-3017, 2021 WL 5121246, at *2 (3d Cir. Nov. 4, 2021) (holding, for incorrect step five determination, "[b]ecause the judge's error did not affect the outcome, we need not remand"). Therefore, if there had been an error, it would have been harmless.